**Ralph and Sharon HUGHES,
Plaintiffs–Appellees,**

v.

**CITY OF NORTH OLMSTED, et
al., Defendants–Appellants.**

No. 95–3655.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1996.

Decided Aug. 20, 1996.

Dennis J. Niermann (argued and briefed), Francis R. Krajenke, Jr., Kramer & Tobocman, Cleveland, OH, for Plaintiffs–Appellees.

Hilary S. Taylor (argued), Glenn D. Southworth (briefed), Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Defendants–Appellants.

Before: MERRITT, Chief Judge; KEITH and SUHRHEINRICH, Circuit Judges.

KEITH, Circuit Judge.

Defendants appeal from an order of the district court denying them qualified immunity on plaintiffs' claim that defendants violated their constitutional rights to privacy and free association during a police department investigation. Because we find that the investigation did not violate a clearly established constitutional right of the plaintiffs, we **REVERSE** the district court and hold that the defendants should have been granted qualified immunity.

## I. BACKGROUND

In 1993, the City of North Olmsted Police Department conducted an internal affairs investigation of Ralph Hughes, who at the time was a probationary employee.[1] The department investigated Hughes because of allegations that he had (1) sexually harassed coworkers, (2) dated a gang member's mother and (3) bragged to women while on duty that

---

1. All new employees of the North Olmsted Police Department are considered probationary employees for a period of 18 months.

he maintained an open marriage and a "swinging" lifestyle.

The investigation was conducted by police lieutenant Frank Viola. During the course of the investigation, Viola claims that he informed Ralph Hughes of the allegations against him and of his departmental rights. Viola asserts that when he interviewed Ralph Hughes, Hughes denied making advances to female co-workers or dating a gang member's mother but told him that he was separated from his wife and had been under a great deal of stress. Viola contends that Ralph Hughes gave him permission to talk to his wife, Sharon Hughes.

Soon thereafter, Viola interviewed Sharon Hughes to verify Ralph Hughes' statements. Sharon Hughes claims that Viola asked her whether her husband dated anyone because there were rumors circulating that she and her husband were "swingers" and had an open marriage.

Viola also interviewed a female security officer who complained about Ralph Hughes, an alleged gang member and his mother, and four female co-workers. The security officer indicated that Ralph Hughes had asked her out one evening and that he had been very persistent. When she refused his advances, she claims that Hughes asked her whether she had any friends who would go out with him. The alleged gang member and his mother both denied having any involvement with Hughes. The first female co-worker stated that Hughes had made passes at her, in a joking manner, but that she had felt he was serious. She claimed that Hughes had made references to his "open marriage," and stated that it was "too bad that she was married." The second female co-worker stated that she did not like Hughes but that he had never said anything provocative to her. The third female co-worker claimed that she was not bothered by Hughes. The fourth female co-worker said that in the past Hughes had said something about "swinging."

Based on this information, the department determined that the allegations of sexual harassment and improper conduct on the part of Ralph Hughes were not substantiated. The department files pertaining to the investigation were then destroyed. As a result, a sworn affidavit of Viola was the only evidence admitted at trial that described the above-mentioned details of the investigation.

The Hugheses filed a complaint in the United States District Court for the Northern District of Ohio on June 27, 1994. In the complaint, the Hugheses alleged that their marital privacy and rights to free association were invaded by the department's investigation. In particular, the Hugheses asserted that: (1) the City of North Olmsted Police Department improperly trained its officers and improperly permitted a wrongful investigation to take place; (2) Dennis Sefcek (North Olmsted Chief of Police) did not properly train the department to conduct the investigation and was irresponsible in initiating the investigation; (3) George Ruple (Captain of North Olmsted Police Department) improperly approved the internal investigation; (4) Barry O'Toole (police lieutenant) did not properly supervise the persons conducting the investigation or control its scope; (5) Frank Viola (police lieutenant) improperly conducted the investigation; and (6) Robert Flynn (police sergeant) improperly requested the investigation.

On October 5, 1994, the defendants moved for summary judgment. The district court granted summary judgment to the City of North Olmsted but denied it as to the individual defendants—Dennis Sefcek, George Ruple, Barry O'Toole, Frank Viola and Robert Flynn. On appeal, these defendants argue that the district court erred in not finding them entitled to qualified immunity. Upon review, we agree with the defendants and find that they were entitled to qualified immunity. Accordingly, the decision of the district court is reversed and the plaintiffs' complaint is hereby dismissed.

## II. DISCUSSION

The Hugheses contend that the police investigation violated their clearly established rights to privacy and free association. They claim that the most violative portion of the investigation occurred when Viola asked Sharon Hughes whether she had an open marriage and whether she and her husband

were "swingers." The individual defendants respond that they are all entitled to summary judgment based on qualified immunity because they did not violate a clearly established constitutional right. The district court denied the defendants' motion for summary judgment.

■ Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Since the question of whether defendants are entitled to qualified immunity is a question of law, we review the district court's determination on the issue de novo. *Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Reiterating this standard, the Supreme Court stated in *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984), "[w]hether an official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of [his] conduct as measured by reference to clearly established law.'"

■ In determining whether a constitutional right was clearly established we look first to the decisions of the Supreme Court, then to decisions of this Court and other courts within our Circuit, and finally to the decisions of other Circuits. *Daugherty*, 935 F.2d at 784. However, as a general rule, a district court decision by itself cannot ordinarily clearly establish a law even of its own circuit, much less that of other circuits. *See Woodward v. City of Worland*, 977 F.2d 1392, 1397 (10th Cir.1992), *cert. denied*, 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993); *see also Davis v. Holly*, 835 F.2d 1175, 1182 (6th Cir.1987) (noting that a decision from another circuit is insufficient to clearly establish a constitutional right); *Lojuk v. Johnson*, 770 F.2d 619, 631 (7th Cir. 1985), *cert. denied*, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986) (concluding that a circuit court case and a district court case from another circuit, along with several other distantly related cases were insufficient to clearly establish a constitutional right).

■ Moreover, it is the plaintiff's burden to convince the court that the law was clearly established at the time of the offensive conduct. *Daugherty*, 935 F.2d at 783. In doing so, a plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Instead, the plaintiff must show a substantial correspondence between the conduct in question and prior law allegedly establishing the defendant's actions were clearly prohibited. *See Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990). Although the plaintiff need not show that the action at issue has previously been held unlawful, the alleged unlawfulness must be "apparent" in light of preexisting law. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

■ In the present case, the defendants should have been granted qualified immunity because there is no evidence that the investigation violated a clearly established constitutional right. Although a constitutionally guaranteed right to free association has been inferred by the Supreme Court from the Due Process Clause of the Fourteenth Amendment, *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958), and a right of privacy has been found in several provisions of the Constitution, *Griswold v. Connecticut*, 381 U.S. 479, 484–86, 85 S.Ct. 1678, 1681–82, 14 L.Ed.2d 510 (1965), the Supreme Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits a state (or state actor) from regulating the private

consensual sexual behavior of adults. *Carey v. Population Services International*, 431 U.S. 678, 694 at n. 17, 97 S.Ct. 2010, 2021 at n. 17, 52 L.Ed.2d 675 (1977) (citations omitted); *see also Bowers v. Hardwick*, 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986) (noting that the Supreme Court has never held that a state is completely prohibited from regulating private consensual sexual conduct between consenting adults).

Moreover, the only case to deal with the issue from our Court, *Briggs v. North Muskegon Police Department*, 563 F.Supp. 585, (W.D.Mich.1983), *aff'd*, 746 F.2d 1475 (6th Cir.1984), did not clearly establish that a violation of the right to privacy or free association would occur if a police department conducted an investigation into the marital sexual relations of a police officer accused of sexual harassment.[2] *Briggs* was a district court case which was affirmed without opinion by a panel of this Circuit. In that case, the district court for the Western District of Michigan held that the dismissal of a married part-time police officer from the police force for living with a married woman not his wife was a violation of that officer's privacy and associational interests. *Id.* at 592. The court found that the police department could not have a legitimate interest in the personal sexual activities of its officers unless such activities affected their job performance. *Id.* at 591. The significance of *Briggs* lies in the fact that the officer in that case was dismissed solely because of his living status, without any reference as to how that status could have affected his performance as an officer. *Id.*

This is a completely different situation than the present case, where in light of the accusations leveled against Hughes, the department's investigation was not unreasonable. The police investigated Ralph Hughes because of claims that he had committed acts of sexual misconduct while on duty, an accu-sation which certainly related to whether Hughes was conducting himself appropriately as a police officer. Indeed, the department would have been derelict in its duties and possibly could have violated federal law had it ignored the claims of sexual misconduct against Hughes. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72–73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (holding that employer can be liable under Title VII for not correcting sexual misconduct that creates an abusive or hostile working environment).

In the face of such allegations, Viola's questions to the other female co-workers and the gang member and his mother were justified because they pertained to the claims that Hughes harassed and had extensive involvement with these individuals. Similarly, the questioning of Sharon Hughes, which Viola claims he did not do until after he was given permission from Ralph Hughes, was reasonably related to the allegations of sexual misconduct on the part of Ralph Hughes. For if Sharon Hughes had confirmed that she and her husband were seeing other people it would have possibly supported the accusations that Ralph Hughes was "bragging" to female co-workers that he had an open marriage. Thus, although we do not condone Viola questioning Sharon Hughes about the status of her marital relationship, the conduct being investigated in this case, unlike the conduct being investigated in *Briggs*, had the potential to severely affect job performance. As a result, we cannot conclude that a reasonable person in Viola's position would have known that he or she was intruding on a privacy or associational right. *See* supra note 1; *see also Doe v. State of Louisiana*, 2 F.3d 1412, 1417 (5th Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994) (*quoting, Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir.1988)) (in holding that child care workers were entitled to qualified immunity, the court noted "[i]t is beyond dispute that many aspects of family

---

2. Another district court case from the Sixth Circuit, *Jackson v. Howell*, 577 F.Supp. 47 (W.D.Mich.1983), dealt with a similar issue but was never reviewed by the Sixth Circuit Court of Appeals. In that case a police officer claimed that a police investigation into the officer's relationship with a woman who had lodged a complaint against him was a violation of his privacy and associational interests. *Id.* at 48. The district court cited to *Briggs* and found that there was not a constitutional violation since the officer's relationship with the woman was fostered through his duties as an officer and was thus related to his performance as a policeman. *Id.* at 50.

integrity possess constitutional stature," however, "reasonable government officials, knowing only that they must not infringe on family integrity, would not necessarily know just what conduct was prohibited.... [I]n the absence of more fact-specific authority, we do not think that appellants ... violated the nebulous right of family integrity."); *Thorne v. City of El Segundo,* 802 F.2d 1131, 1139 (9th Cir.1986) (holding that city officials were entitled to qualified immunity for conducting broad and unregulated inquiry into employee's off-duty sexual activities since the right to privacy in such matters was not clearly established); *Woodward,* 977 F.2d at 1397–98; *Hedge v. County of Tippecanoe,* 890 F.2d 4, 7–8 (7th Cir.1989)

## III. CONCLUSION

In this case, it is clear that there was a generally established right to privacy and free association at the time of the police investigation. However, at that time, those rights were not so clearly established by the Supreme Court or this Circuit that police department officials would have realized their actions were violating the law. Thus, in the absence of more fact-specific authority defining how an investigation into private sexual matters invades the realm of privacy and free association, the department investigation could not have infringed upon clearly established constitutional rights. As a result, the department officials named as defendants in the suit should have been granted qualified immunity. Thus, the decision of the district court is **REVERSED** and the plaintiffs' cause of action is dismissed.