**Brenda MATTOX and Dona Holly, Plaintiffs–Appellees,**

v.

**CITY OF FOREST PARK; Stephen Vollmar, Police Chief; Ray Hodges; and Kenneth Hughes; Defendants–Appellants.**

No. 98–3379.

United States Court of Appeals, Sixth Circuit.

Argued: April 22, 1999.

Decided and Filed: July 13, 1999.

Rehearing Denied Aug. 11, 1999.

516

Scott T. Greenwood (argued and briefed), Greenwood & Associates, Cincinnati, Ohio, for Plaintiffs–Appellees.

Lawrence Edward Barbiere (argued and briefed), Schroeder, Maundrell, Barbiere & Powers, Cincinnati, Ohio, for Defendants–Appellants.

Before: KENNEDY, SILER, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Defendants in this case appeal the district court's denial of qualified immunity to the individual defendants and argue for pendent appellate jurisdiction over the city in this civil rights action. The case arises from the issuance of a 690–page report—the result of extensive criminal and administrative investigations into the Forest Park Fire Department. In the proceedings below, the magistrate judge concluded (and the district court accepted) that one of the plaintiffs' claims under 42 U.S.C. § 1983—First Amendment retaliation—survives the qualified immunity defense proffered by defendants. We conclude that no such claim survives and reverse the district court.

## I. BACKGROUND

### A. Facts

The plaintiffs are Brenda Mattox, member of the City Council of Forest Park from her election in November 1991 until her resignation following an electoral defeat in November 1993, and Dona Holly, a volunteer with and then member of the Forest Park Fire Department from 1989 to 1993. The defendants are the City of Forest Park, Police Chief Stephen Vollmar, City Manager Ray Hodges, and police officer Kenneth Hughes. In September 1992, several firefighters (among them Dona Holly) raised concerns about the fire department with Council Member Mattox

because Mattox chaired the Public Safety Committee, which has authority to oversee the police and fire departments. Mattox relayed these concerns to the rest of the council and to City Manager Hodges; ultimately, the council directed Hodges to conduct an investigation of the fire department. The City's investigation began in early 1993; in tandem with the fire department's internal administrative investigation was a criminal investigation by the police force. The police investigation focused on several incidents, particularly the ransacking of a rescue unit, the placement of a lock on a hazardous materials truck, and the theft of some morphine.

Hodges directed the compilation of a preliminary report. Upon its completion, the council requested a final and more thorough report, which was the 690–page report released October 12, 1993. Apparently Chief Vollmar directed Captain Hughes to compile the information for the reports, and Hughes claims that he was informed by the City Solicitor that all information gathered as part of the investigations was a matter of public record and should be placed in the report. The report was made available to the press and to the public in general. The report is a hodgepodge of information, including transcripts of interviews, time lines, letters, faxes, and diary entries, among other things. It also contains an introduction and "overview" section, J.A. at 390–405, written at least in part by Vollmar, which contains some of the statements allegedly made in retaliation against plaintiffs. Subsequent to producing the written report, the police department produced a video overview of the report, which entailed Vollmar and Hughes discussing the substance of the report and editorializing as to the process and its results. The video runs thirty-four minutes in length and was shown on local-access television as many as nine times just prior to the November 1993 City Council elections. Mattox was running to retain her council seat. Both plaintiffs contend that the comments and allegations contained in the report and video were designed to punish them for their part in initiating the investigations of the fire department.

## B. Procedural History

The complaint in this action was filed on October 11, 1995.[1] The defendants filed an answer in November 1995, an amended answer in June 1996, and moved for summary judgment in December 1996. Plaintiffs opposed the summary judgment motion, and following receipt of the defendants' reply brief, the magistrate judge held a hearing on the motion on July 17, 1997. His Report and Recommendation, issued on February 27, 1998, suggested granting defendants' motion for summary judgment as to all counts except one: the content of the overview to the report and of the police video might enable plaintiffs to make out a claim of First Amendment retaliation under 42 U.S.C. § 1983, and, in the magistrate judge's view, the individual defendants were not entitled to a defense of qualified immunity on this count. The defendants filed objections to the magistrate judge's report on March 9, 1998. On March 31, 1998, the district court adopted the Report and Recommendation fully in a four-page order, and the defendants subsequently filed a timely appeal.

## II. ANALYSIS

### A. Jurisdiction

■ *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), categorized denials of summary judgment on the basis of qualified immunity as "collateral orders" immediately appealable under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), to the extent that they present issues of law separable from the merits yet potentially determinative of a

---

1. The original complaint identifies more plaintiffs and more defendants than are currently parties—several of each were dismissed at various points in the process.

claim. The recent Supreme Court case of *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), is intended to clarify when appellate courts can take jurisdiction of an interlocutory appeal from a denial of qualified immunity, and it holds that if the denial turns on the existence of a genuine issue of material fact in dispute, an interlocutory appeal is improper and the court is without jurisdiction to hear the appeal.

 Although *Johnson* itself presented a clean case for its own application—the defendant police officers contested the very fact of their presence at the scene of the event—many cases involve issues of fact *and* law in the summary judgment determination by the district court. Here, the district court indicated that "[r]etaliation against citizens for the exercise of their Constitutional rights" was clearly forbidden at the time the events in this case transpired, and also that the intent of defendants is still a material fact in dispute. *See* J.A. at 97–98. Under the doctrine of *Johnson v. Jones,* this court cannot review on interlocutory appeal a district court's determination that a genuine issue of fact exists for trial, *see Johnson,* 515 U.S. at 319, 115 S.Ct. 2151, but we retain jurisdiction over the legal question of qualified immunity, i.e., whether a given set of facts violates clearly established law. We review de novo the district court's denial of qualified immunity. *See McBride v. Village of Michiana,* 100 F.3d 457, 460 (6th Cir.1996).

**B. The Substance of the Final Report**

██ As a preliminary matter, we note that the plaintiffs contend that the release of the entire October report (including the overview section) and the police video were retaliatory in nature. Plaintiffs do not contend, nor could they, that the underlying investigation conducted by defendants is improper because those actions would be barred by the two-year statute of limitations. *See* J.A. at 40 (Mag. J. R & R at 9). But the report was released on October 12, 1993, and the plaintiffs filed suit on October 11, 1995. The complaint and plaintiffs' brief on appeal each make many references to the substance of the report and the private information disclosed about Holly by way of the report's release. Therefore, the report itself is also at issue in this appeal.

The magistrate judge concluded otherwise. He wrote:

> [T]he Police Department conducted a fair and proper investigation into issues of legitimate interest to the community of Forest Park. The facts presented in the October Report appear to be objective and correct, therefore the substance of the October Report is not at issue in this case.

J.A. at 54 (Mag. J. R & R at 23). Although the defendants filed objections to the magistrate judge's report pursuant to Federal Rule of Civil Procedure 72(b),[2] the plaintiffs did not. This court has used its supervisory power to hold that though the language of the rule is discretionary, "a party shall file objections with the district court or else waive right to appeal." *United States v. Walters,* 638 F.2d 947, 950 (6th Cir.1981). The *Walters* court also made clear that "a party shall be informed by the magistrate that objections must be filed within ten days or further appeal is waived." *Id.* The Supreme Court affirmed this court's application of the *Walters* rule in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), explicitly holding that "[s]uch a rule, at least when it incorporates clear notice to the litigants and an opportunity to seek an extension of time for filing objections, is a valid exercise of the supervisory power...." *Id.* at 155, 106 S.Ct. 466. The report and recommendation in this case, however, contains no such notice to the plaintiffs, and there-

---

**2.** In relevant part, the rule states: "Within 10 days after being served with a copy of the recommended disposition, a party may serve

and file specific, written objections to the proposed findings and recommendations."

fore does not comport with the *Walters* rule. We cannot presume that the plaintiffs have waived their argument that the substance of the report is still at issue as part of their retaliation claim.

Moreover, this situation is similar in some respects to *Turpin v. Kassulke*, 26 F.3d 1392 (6th Cir.1994), *cert. denied*, 513 U.S. 1118, 115 S.Ct. 916, 130 L.Ed.2d 797 (1995), where the appellee neglected to object to a magistrate judge's proposed adverse resolution of an evidentiary issue. The *Turpin* court wrote:

> Although the magistrate judge proposed that the secondary issue of the admissibility of the writings be resolved in [appellant's] favor, he nonetheless concluded that the [appellee] should prevail on its motion for summary judgment. If we were to require a party in the [appellee's] position to present objections to a magistrate judge's proposed adverse resolution of a secondary issue, we would force that party to articulate objections to a recommendation that it prevail. Such a requirement would only frustrate the judicial economy and litigant expense policies that underlie the *Walters* rule.

*Id.* at 1399–1400. The plaintiffs in this case are responding to an appeal by the defendants on the issue of qualified immunity—they are not entitled to cross-appeal. They did not receive notice that the failure to object to aspects of the magistrate judge's report would waive appellate review of those aspects, and therefore we do not deem the issue waived.

We disagree with the magistrate judge's reasoning on the nature of the report. The fact that the information comprising the bulk of the report "appears to be objective and correct" does not remove it from the purview of a First Amendment retaliation action. Accurate but irrelevant information about personal matters publicly aired by government officials intent on penalizing a citizen for exercising her First Amendment rights are cognizable under § 1983, as discussed below. We turn now to whether the plaintiffs have sufficiently alleged such a claim.

## C. First Amendment Retaliation

The qualified immunity inquiry entails a determination of whether the law allegedly violated was "clearly established" at the time of the events at issue. However, courts must answer a threshold inquiry first: Did the plaintiffs sufficiently allege violation of a constitutionally or statutorily protected right? As the Supreme Court indicated in *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Id.* at 232, 111 S.Ct. 1789; *see also Blair v. Meade*, 76 F.3d 97, 100 (6th Cir.1996) ("[w]hen a court determines whether qualified immunity exists, it must first ask 'whether the plaintiff has asserted a violation of a constitutional right at all'") (quoting *Siegert*); *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir.1995) ("a court faced with a qualified immunity question should decide squarely whether a constitutional claim is presented"). Here, the plaintiffs have failed to allege a constitutional violation. This failure is fatal to their case.

The three elements of a retaliation claim are:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998). More simply framed, the issue is whether the adverse action taken

against plaintiffs by defendants was motivated in substantial part by the protected activity of the plaintiffs, which is the way the magistrate judge analyzed it.

The magistrate judge engaged in an analysis of the first *Bloch* element—protected activity—and determined that the speech of plaintiffs was clearly protected by the First Amendment. The speech at issue in this case concerned the workings of the Forest Park Fire Department and public safety, falling easily under the rubric of "comments on matters of public concern." *See Pickering v. Board of Educ.,* 391 U.S. 563, 568, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The district court indicated that the third element remained a material fact in dispute: "Whether the defendants intentionally retaliated against plaintiffs because they exercised their 1st Amendment Rights is a material issue contested by the parties." J.A. at 98 (Dist.J. Order at 3). Neither judge explicitly addressed the second element—the adverse action suffered by plaintiffs.

This court recently engaged in a thorough analysis of First Amendment retaliation claims in *Thaddeus–X v. Blatter,* 175 F.3d 378 (6th Cir.1999) (en banc). There, in an attempt to clarify the definition of "adverse action" for purposes of retaliation claims, this court adopted the standard first articulated in *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982), that an adverse action is one that would "deter a person of ordinary firmness" from exercise of the right at stake. *See also Bloch,* 156 F.3d at 678, 679–81 (adopting *Bart* test). The standard is an attempt to balance the tension between two propositions: First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort—like any tort—requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment. See *Thaddeus–X,* 175

F.3d at 396–97 (citing *Bart,* 677 F.2d at 625).

Although *Thaddeus–X* is a recent opinion, it clarified rather than departed from this circuit's earlier precedent. The cases cited by the magistrate judge are drawn from the public employment context and involved serious adverse actions: the words used to describe the actions in those cases included "firing," "dismissal," "transfer," "discharge," and "suspension." *See* J.A. at 45–46 (Mag. J. R & R at 14–15). The plaintiffs allege nothing similar here. The plaintiffs' complaint describes the publication of the October report and the police video as affecting "the characters and reputations of Plaintiffs, holding them up to ridicule, contempt, shame, and disgrace," making them "the objects of reproach, intentionally degrading Plaintiffs and abridging their respectabilities, comforts, and positions in society," and crushing "the political position and esteem possessed by Plaintiff Brenda Mattox, Plaintiff Mattox losing the November 1993 city council election and her seat on that council." J.A. at 23 (Complaint at 16, ¶¶ 98–100).

We recognize that in some cases "injury based on embarrassment, humiliation, and emotional distress" is sufficient to be actionable under § 1983. *Bloch,* 156 F.3d at 679–80; *see also Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). In *Bloch,* the defendant police officer responded to the victim's criticism of his investigation into her rape by revealing to the media extremely intimate and humiliating details about the crime, some of which the victim had not even revealed to her husband. In *Barrett,* a judge issued press statements that falsely accused a lawyer of stalking her, in retaliation for criticisms the lawyer had made of her. Both cases survived an early motion to dismiss based on qualified immunity.[3] The allegations in this case, however, differ from those in *Bloch* and *Barrett.*

**3.** Defendants are incorrect to rely on *Paul v.*

*Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47

## 1. Mattox

█ Turning to Mattox first, we understand the thrust of her complaint to be that the adverse publicity she received caused her to lose the election. The video and the final report do indeed contain many references to Mattox, most of them unfavorable. It is clear that she was viewed by many, including those who put together the report, as having acted outside the scope of her proper role as a member of council by improperly interjecting herself into the ongoing investigations. Discussions and accusations about the people and events surrounding these investigations played themselves out in public conversation, in council meetings, in the press, and in the final report and video at issue in this case. Although the events in Forest Park were perhaps more bitter or more divisive than similar political battles elsewhere, they are not thereby constitutionally actionable. Mattox, a political figure, staked out a controversial position on a political issue in her town, and it cost her political capital and, ultimately, a re-election bid.

As an elected public official, Mattox voluntarily placed herself open to criticism of her actions and views on political matters. A deliberate attempt to discredit Mattox, especially if initiated in retaliation for her actions in investigating the fire department, is perhaps an inappropriate and unfortunate occurrence, but on the facts of this case, it is not the type of "adverse action" against which the First Amendment protects. It is not equivalent to being fired by a government employer for expressing protected views. We do not think it would deter a public official of ordinary firmness from exercising his or her right to speak under the First Amendment. Public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views. Mattox has not pleaded sufficient injury to make out a claim for First Amendment retaliation.

## 2. Holly

█ The focus of Holly's complaint is the revelation of some private information in the report. The transcript of her investigative interview was reproduced in full in the report, and touched on a traumatic childhood incident. *See* J.A. at 306 (Holly Int. at 68). There were also questions concerning her personal relationships with members of the fire department. *See* J.A. at 928–29 (Holly Int. at 92–93). She was questioned in detail about entries she made in a date book, and asked to decipher initials and explain items she had crossed out. Pages of the date book were reprinted in the report. Over 150 pages of the report are transcripts of interviews with Holly, many rather mundane but a few revealing personal information.

Whether these revelations, if made intentionally to punish Holly, are sufficient to state a claim for First Amendment retaliation is a close question. The questions posed to her about office affairs were tangentially related to charges of sexual harassment against one of the fire department members.[4] *See Hughes v. City of North Olmsted,* 93 F.3d 238 (6th Cir.1996) (questions posed to officer and his wife about intimate sexual matters reasonable in light of charges of sexual harassment against officer; constitutional rights to privacy and free association not so clearly

L.Ed.2d 405 (1976), for the proposition that defamation and invasion of privacy can never be constitutional torts under § 1983. *Paul* is exclusively a Fourteenth Amendment case, and holds only that defamation by a public official does not infringe a "liberty" or "property" interest protected by the Due Process Clause. *Id.* at 712, 96 S.Ct. 1155. Analysis of retaliation cases under the First Amendment is distinct, and the effect of public disclosure

of damaging information about an individual may be enough to trigger constitutional protection, as in *Bloch* and *Barrett*.

4. Although the police investigation focused on the incidents of vandalism described above, the internal administrative investigation encompassed more broadly defined activities of the Fire Department and its personnel.

established that officials would realize their actions were violating the law). Regardless of the propriety of the questions, however, there seemingly was no reason to make her revealing personal statements public in the report. As explained earlier, the revelation of embarrassing details that are irrelevant to the investigation at hand for purposes of retaliation is improper, and may constitute a First Amendment retaliation claim.

Under the facts of this case, however, we are constrained to hold that Holly has not pleaded injury sufficient to withstand a motion for summary judgment by the defendants. Without minimizing any embarrassment she may have suffered, the revelations at issue in this case do not rise to the level of those in *Bloch* or *Barrett*. The traumatic childhood incident was not the focus of the report, or of the investigation, or even of the questions being asked in the interview. Holly volunteered it by way of analogy as an aside during a legitimate line of questioning, the full text of which was contained in the 690–page report. There was no reference to that sensitive information in the introduction or overview sections of the report or in the video overview. In *Bloch*, humiliating details of the plaintiff's rape were released to punish her for criticizing the officer who made them. In *Barrett*, false accusations were lodged by a judge against a lawyer who criticized her. The damaging statements came from the mouths of the defendants and were the whole of or the focus of the public communication, so their retaliatory nature was clear. The same is not true in this case.

Moreover, neither the complaint nor the briefs allege concrete injuries suffered by Holly as a result of these revelations. She offers only generalized statements about the effect on her character and reputation, about being held up to "ridicule, contempt, shame, and disgrace," and the about the effect on her respectability, comfort, and position in society. Nowhere does she attempt to concretize her personal injury. Without anything more specific, we cannot say that this meets the constitutional threshold required for her claim of First Amendment retaliation to proceed.

In sum, neither plaintiff in this case has alleged an "adverse action" sufficient to sustain a claim of First Amendment retaliation, and therefore, the district court improperly denied qualified immunity to the individual defendants.

### D. City of Forest Park

In *Swint v. Chambers County Commission*, 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Eleventh Circuit had used its discretionary pendent appellate jurisdiction to reach the denial of summary judgment to the Commission notwithstanding the fact that the denial was not independently appealable as a collateral order, but the Supreme Court reversed. The Eleventh Circuit purported to exercise pendent jurisdiction over the summary judgment in the interest of judicial economy, while it was reviewing the denial of qualified immunity to individual governmental defendants. The Supreme Court held that jurisdiction was improper in that case, however, because the two questions were unrelated—there was no contention that the "summary judgment motion was inextricably intertwined with that court's decision to deny the individual defendants' qualified immunity motions...." *Id.* at 51, 115 S.Ct. 1203. In *Swint*, the two inquiries were manifestly separate: "The individual defendants' qualified immunity turns on whether they violated clearly established federal law; the county commission's liability turns on the allocation of law enforcement power in Alabama." *Id.*

Such is not the case here. If the plaintiffs have failed to state a claim for violation of a constitutional right at all, then the City of Forest Park cannot be held liable for violating that right any more than the individual defendants can. The inquiry is precisely the same in both cases, and the justification for the decision in *Swint* is not present here. This court has used pendent appellate jurisdiction under circumstances similar to the case sub judice in

**524**

*Brennan v. Township of Northville,* 78 F.3d 1152 (6th Cir.1996). In *Brennan,* the court decided that the plaintiff had not alleged a constitutional violation, and that decision indisputably resolved the other issue appealed—the grant of summary judgment on liability to the plaintiff. *Id.* at 1157–58. Without alleging a constitutional violation, Brennan could not receive summary judgment on his § 1983 claim. In fact, the *Brennan* court remarked on the very scenario present here—the city in that case also had been adjudged liable on summary judgment for violating Brennan's constitutional rights, and the court indicated that it would have reached the city's claim as well, but for the fact that the city was not a party to the appeal and its summary judgment motion could not be reviewed.

Neither *Brennan* nor today's decision is contrary to *Swint,* which left open the possibility that two determinations (one immediately appealable and one not) could be "inextricably intertwined" and thus appropriately reviewed together. The Sixth Circuit is not alone in using this discretionary power post-*Swint.* On facts similar to those here in all relevant respects, the Tenth Circuit wrote:

> As we read *Swint,* a pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well.

*Moore v. City of Wynnewood,* 57 F.3d 924, 930 (10th Cir.1995). Because that court decided that no constitutional violation had occurred at all, it necessarily resolved the City of Wynnewood's summary judgment motion as well.

The court in *Moore* pointed out that if it had resolved the qualified immunity question on other grounds—i.e., that a constitutional violation had occurred but the individual defendants were entitled to qualified immunity because the law was not "clearly established," or that a constitutional violation had occurred but questions remained as to whether a "final policymaker" was involved—then interlocutory appellate jurisdiction would have been improper. We have followed this approach in our own cases. *See Brennan,* 78 F.3d at 1158; *Williams v. Kentucky,* 24 F.3d 1526, 1542–43 (6th Cir.), *cert. denied,* 513 U.S. 947, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994).

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's determination that the individual defendants cannot invoke qualified immunity. The plaintiffs in this case have failed to make a threshold showing that their constitutional rights were violated. We also use our discretionary power of pendent appellate jurisdiction to exercise jurisdiction over the denial of summary judgment to the City. Because the plaintiffs have not shown violation of their constitutional rights, the district court's denial of summary judgment to Forest Park is likewise **REVERSED.**