NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0375n.06

Case No. 24-1916

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 28, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| CORNELIUS HERRING; GEOFFREY HOWARD, | ) |
| | ) |
| Plaintiffs - Appellants, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF MICHIGAN |
| CITY OF ECORSE, MICHIGAN; LAMAR | ) |
| TIDWELL; MICHAEL MOORE; NARDA | ) |
| BRUNO, | ) OPINION |
| | ) |
| Defendants - Appellees. | ) |
| | ) |

Before: SUTTON, Chief Judge; STRANCH and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Cornelius Herring and Geoffrey Howard brought a suit under 42 U.S.C. § 1983 against the City of Ecorse, Michigan, where they worked as police officers, and various City officials. Herring and Howard claimed that they were retaliated against in violation of their First Amendment rights. The district court dismissed their claims as barred by res judicata, because the claims could have been asserted in prior state-court lawsuits against the City. Herring and Howard appeal, but their arguments are either forfeited or fail on their merits. We therefore affirm the district court's dismissal.

## BACKGROUND

### I. Factual background

Geoffrey Howard is a current employee with the Ecorse, Michigan Police Department, and Cornelius Herring is a former employee. The two officers have a contentious history with other Police Department employees. In 2016, Narda Bruno, the Department's deputy director, alleged

that Herring and Howard were creating a hostile work environment. The following year, in connection with Herring and Howard's own complaint about a hostile work environment, Herring told then-director of the Department Michael Moore that officer Kevin Barkman was improperly using impounded vehicles for his personal use and misusing the Law Enforcement Information Network (LEIN). LEIN is a statewide computerized information system used by Michigan's criminal-justice agencies.

Although an investigation failed to substantiate their allegations of a hostile work environment, Herring and Howard each filed complaints in state court in July 2018 against the City, Moore, and Lamar Tidwell, the mayor of Ecorse. Herring and Howard alleged discrimination and retaliation in violation of Michigan law.

Later that year, Herring and Howard, while off duty, told the FBI that City officials, including Barkman, were illegally transferring ownership of stolen or impounded vehicles to themselves. The Michigan Attorney General's Office began an investigation into public corruption related to the impounded vehicles and obtained a search warrant in February 2019 for the email accounts of Moore, Barkman, and another Department employee. After the Attorney General's Office obtained the search warrant, Barkman reported to Moore that Herring and Howard were bullying and harassing him, including about his marital status and sexual orientation.

In the fall of 2019, Herring and Howard amended their state-court complaints. Around this time, Herring was fired from the Department. Herring and Howard also claim that, in this same timeframe, deputy director Bruno suggested to the Wayne County Prosecutor's Office that they should be included on that office's *Brady-Giglio* list, which comprises police officers whose credibility is in question. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

In August 2020, the Michigan state court granted summary disposition for the City, Tidwell, and Moore in Howard's lawsuit, and denied Howard's motion for reconsideration the following month. The Michigan state court granted the defendants' motion for summary disposition in Herring's case in March 2021.

Meanwhile, on September 23, 2020, Howard emailed Moore and Ecorse City Administrator Richard Marsh to complain about an altercation he had with Barkman. Marsh followed up with Moore alone, expressing concern about the tone and content of Howard's email. Moore wrote back to Marsh the same day, letting him know that Moore was aware of the altercation, informing him that Howard had been "inconsolable" since his lawsuit was dismissed, and adding context that Howard and Herring had been "tormenting Corporal Barkman about his sexual orientation and marital status." RE 24-2, Marsh Emails, PageID 1619. Moore also wrote that the most recent confrontation was "another baseless attack on Corporal Barkman by one of the same individuals that ha[s] been tormenting him." *Id.*

At around this same time, the Detroit News began publishing a series of articles about the Ecorse Police Department. One article published on October 1, 2020, titled "Ecorse police face probe of alleged stolen truck 'cover-up,'" reported that Moore and other officers were being investigated for an alleged "cover-up" concerning a stolen vehicle. RE 24-11, Oct. 1, 2020 Detroit News Article, PageID 1689-91. The article also stated that Moore had accused the affiant for the February 2019 search warrant of perjury. The article, moreover, outlined Herring and Howard's allegations that Barkman was involved in a "towing corruption scandal" and quoted Moore as stating, "This is a situation where a few police officers don't like Barkman because he's openly gay." *Id.* at PageID 1689-90. Eight days after this article was published, Moore's employment was terminated, which prompted him to file a federal lawsuit in November 2020 against the City

and Marsh. Moore alleged violations of 42 U.S.C. § 1983 and the Whistleblowers' Protection Act, as well as a breach of his employment agreement. The lawsuit contained factual allegations related to the interpersonal conflicts between Barkman, Herring, and Howard, but referred to these individuals only by their initials.

On May 5, 2021, the Detroit News published another article titled, "Ecorse ousts public safety director in whistleblower lawsuit." RE 25-14, May 5, 2021 Detroit News Article, PageID 2005-07. This article discussed the Ecorse City Council's vote to oust Joseph Thomas, who had replaced Moore as police director, and replace him with Moore and Bruno. The article also indicated that Moore had agreed to drop his lawsuit against the City. As background for the controversies within the Police Department, the article summarized the impounded-vehicle investigation, Barkman's alleged role, and Moore's previous remark that "[t]his is a situation where a few police officers don't like Barkman because he's openly gay." *Id.* at PageID 2007.

Finally, on October 24, 2023, the Detroit News published an article titled, "Ex-Ecorse police officer's harassment claims prompt lawsuit, counterclaims." RE 25-11, Oct. 24, 2023 Detroit News Article, PageID 1975-78. This article detailed a lawsuit that Barkman had filed against the City, Herring, Howard, and others over their alleged harassment. It referenced a September 2020 memo from Moore to Marsh, in which Moore stated, "[T]here is no doubt in my mind that [Herring and Howard] were harassing Barkman." *Id.* at PageID 1977. The article also quoted Tidwell's remarks to external investigators in 2021 that "the officers 'threw everything they could' at Barkman" and that "it was a known issue that they had a problem with Barkman being gay." *Id.* at PageID 1975.

In the spring of 2021, Herring returned to work with the Police Department. Because he had been gone from the Department for a significant period, the Michigan Commission on Law

Enforcement Standards mandated that he undergo a fitness-for-duty examination. Herring passed the physical component of the fitness-for-duty examination but not the psychological component. He subsequently announced his resignation and retirement from the Department. In 2022, Howard was also required to undergo a fitness-for-duty examination, as were all other City police officers, save those hired within the last two years. The record does not reflect the results of Howard's fitness-for-duty examination, but the parties agree that Howard is a current Police Department employee.

In addition to these events, Herring and Howard allege that the defendants hired a firm called AG Advisors Global to investigate the allegations of harassment that Barkman made against them. They claim that during this investigation, Tidwell, Moore, and Bruno continued to allege that Herring and Howard were homophobic and had harassed Barkman because he was gay.

## II. Procedural history

On May 20, 2022, Herring and Howard filed a federal complaint under 42 U.S.C. § 1983 against the City, Tidwell, Moore, and Bruno, alleging that they were retaliated against for exercising their First Amendment rights of freedom of speech and freedom of association. As to freedom of speech, they alleged that they suffered retaliation because they reported suspected corruption related to the LEIN database and to the theft or conversion of seized vehicles, and because they participated in an FBI investigation. As to freedom of association, they alleged that they were "unjust[ly] discipline[d]" for associating with individuals with whom they had the constitutional right to associate. RE 1, Compl., PageID 24-25.

### A. Motion to dismiss

The City, Moore, Tidwell, and Bruno filed a motion to dismiss, which the district court granted in part and denied in part. The court held that, to the extent that the alleged conduct

underlying Herring and Howard's claims in the federal case predated the dismissal of their respective state-court lawsuits, their claims were barred under the doctrine of res judicata, because they either were or could have been brought in those state-court actions. Those claims included "most, if not all, of the alleged retaliatory actions set forth in the current lawsuit." RE 11, Op. & Order on Mot. to Dismiss, PageID 1381.

But the district court acknowledged that it was unclear when Herring and Howard learned about: (1) Moore's September 23, 2020 email to Marsh stating Howard was unfit for duty and that the plaintiffs were homophobic; (2) statements to the Detroit News in October 2020 that the plaintiffs were homophobic and corrupt; and (3) assertions in the federal lawsuit that Moore filed on November 20, 2020, alleging that the plaintiffs were homophobic. The district court allowed Herring and Howard's claims to proceed "only to the extent based on" these three allegations, as well as "those arising after the state court litigation concluded." *Id.* at 1382 (emphases omitted). The court also permitted the defendants to re-raise their res judicata arguments at a later date. *Id.*

B. **Motion for summary judgment**

After discovery, the defendants filed a motion for summary judgment on claims arising out of the three outstanding allegations, as well as out of new allegations by Herring and Howard concerning their fitness-for-duty examinations. The district court granted summary judgment for the defendants on all claims.

First, as to the claim based on the September 23, 2020 email from Moore to Marsh, Herring and Howard had included this incident in a list of allegedly retaliatory actions but failed to brief the issue further. The court therefore found that the issue was waived.

Second, with respect to the claim based on Moore's November 2020 federal lawsuit against the City and Marsh, the district court noted that the lawsuit "does not in fact include any . . .

assertions . . . [that Herring and Howard were] homophobic, misogynistic, mentally unstable, or incompetent," nor did it include their full names. RE 29, Op. & Order on Summ. J, PageID 2213 (cleaned up). Moreover, because Moore was not a City employee when he filed his lawsuit, Herring and Howard could not establish, as they must for their § 1983 claims, that he "acted under color of state law." *Id.* at PageID 2213-14 (quoting *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023)).

Third, with respect to claims based on the Detroit News articles, the district court noted that, in addition to the October 2020 article, Herring and Howard had expanded their claims to include the May 2021 and October 2023 articles. The court reasoned that "most, if not all, of the statements attributed to Moore and Tidwell" in these articles were made prior to each article's respective date of publication and prior to the termination of Herring and Howard's state-court lawsuits, so they "were known or knowable by Plaintiffs before" their lawsuits were dismissed. *Id.* at PageID 2216. The court also reasoned that Moore and Tidwell's "raising Plaintiffs' alleged homophobia to attack the truth of their statements to the FBI" had been occurring "for some time" before the conclusion of the state-court lawsuits. *Id.* It therefore held that the claims based on the Detroit News articles were barred by res judicata.

Finally, the district court held that neither Herring nor Howard could advance a claim for First Amendment retaliation based on the fitness-for-duty examinations. Herring claimed that he was required to see a doctor that no other police officer was required to see, but the defendants presented undisputed evidence demonstrating that they did not select the doctors who conducted the evaluation. And although Herring claimed that a union representative had told him that he was being sent for a fitness-for-duty examination in retaliation for his cooperation with the FBI, Herring proffered no evidence for this allegation beyond inadmissible hearsay. The district court

also took into consideration the fact that "psychological examinations are not adverse actions." *Id.* at PageID 2218 (quoting *Harrison v. City of Akron*, 43 F. App'x 903, 905 (6th Cir. 2002)) (cleaned up). As for Howard, the fact that the City required every police officer, except those hired within the last two years, to undergo a fitness-for-duty examination doomed his claim.

Herring and Howard timely appealed the district court's grant of summary judgment to the defendants.

## ANALYSIS

### I. Standard of review

We review the district court's grant of summary judgment de novo. *Lowe v. Walbro LLC*, 972 F.3d 827, 831 (6th Cir. 2020). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Saunders v. Ford Motor Co.*, 879 F.3d 742, 748 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### II. First Amendment retaliation

Under 42 U.S.C. § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). In order to plead a First Amendment retaliation claim, a plaintiff must allege: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing

*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).  This framework applies to claims alleging retaliation for either free speech or free association.  *Thaddeus-X*, 175 F.3d at 390; *Boals v. Gray*, 775 F.2d 686, 692 (6th Cir. 1985).  The inquiry is context-driven: "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context." *Thaddeus–X*, 175 F.3d at 388.

In the First Amendment context, "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute an adverse action], which may include harassment or publicizing facts damaging to a person's reputation." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (citing *Thaddeus–X*, 175 F.3d at 397).  When a plaintiff's alleged adverse action is "inconsequential," resulting in nothing more than a "de minimis injury," the claim is properly dismissed as a matter of law.  *Bell v. Johnson*, 308 F.3d 594, 603, 606 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 398).

## III.    Claims at issue

### A.    September 23, 2020 email

Herring and Howard claim that the district court erred in dismissing their claim that the defendants retaliated against them when Moore sent an email to Marsh stating that Howard was physically and mentally unfit for duty and that Herring and Howard were both homophobic.  The district court dismissed this claim as waived because Herring and Howard merely listed the email as one of many allegedly retaliatory actions upon which they based their claims, without developing any argument in opposition to the defendants' motion for summary judgment. Although the district court used the term "waiver," we would consider the issue forfeited.  Our cases have sometimes used the terms interchangeably, but "[w]aiver is different from forfeiture."

*United States v. Olano*, 507 U.S. 725, 733 (1993). "Waiver is affirmative and intentional, whereas forfeiture is a more passive failure to make the timely assertion of a right." *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (cleaned up).

Regardless, on appeal, Herring and Howard fare no better than they did in the district court. They simply claim that this email was an adverse act that "caused enormous problems and stress" for them. CA6 R. 18, Appellant Br., at 22. Where a district court concludes that a party abandons a claim by failing to raise it in a brief opposing a dispositive motion, we "need not consider [that] claim[]." *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007); *see also Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014). Further, Herring and Howard offer no reason why the district court erred in deeming the issue waived, so they have forfeited the issue on appeal. *See Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020). Accordingly, we affirm the district court's dismissal of this claim.

### B. Statements published by the Detroit News

Herring and Howard next argue that the district court erred in dismissing their claim that defendants retaliated against them by making statements to the Detroit News. The district court concluded that all of the claims stemming from the Detroit News articles published in October 2020, May 2021, and October 2023 were barred by res judicata, because "most, if not all, of the statements attributed to Moore and Tidwell were made prior to the date [that the Detroit News] publi[shed them] and before Plaintiffs' state-court lawsuits terminated." RE 29, Op. & Order on Summ. J., PageID 2216. Therefore, the statements were "known or knowable by Plaintiffs before those latter dates." *Id.* Alternatively, the district court noted that "Moore and Tidwell had been raising Plaintiffs' alleged homophobia to attack the truth of their statements to the FBI, [as well

as] accused Plaintiffs of harassing Barkman because of his sexual orientation" "well before [their] state-court lawsuits terminated." *Id.*

On appeal, Herring and Howard argue that they did not learn that Moore had made comments to the newspaper until after April 2021. But they did not make this argument in their brief before the district court, and may not do so for the first time on appeal. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) (declining to consider an argument that a "party belatedly asserts . . . on appeal after having failed to raise it in the district court"). More to the point, in their brief on appeal, they do not engage with the district court's res judicata analysis, including its reasoning as to when Moore and Tidwell's statements were known or knowable to them. For the same reasons set forth above, these claims are forfeited on appeal. *Courser*, 969 F.3d at 621; cf. *Doe*, 507 F.3d at 1007.

### C.    Moore's November 2020 lawsuit

Herring and Howard next argue that the district court erred in dismissing their claim that Moore retaliated against them by calling them homophobic in the November 2020 lawsuit that Moore filed against the City and Marsh. The district court dismissed this claim because (1) Moore referred to the plaintiffs only by their initials in his complaint and did not call them "homophobic"; and (2) even if he had done so, he was a private actor when he filed the lawsuit.

To succeed on their § 1983 claim, Herring and Howard must prove that they were deprived of a right "secured by the Constitution or laws of the United States" and that such deprivation was "caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). And to show that a private defendant, like Moore, acted "under color of state law," Herring and Howard must show that the alleged conduct causing the deprivation was "fairly attributable to the State." *Lugar v. Edmondson*

*Oil Co.*, 457 U.S. 922, 937 (1982). Conduct causing a deprivation is fairly attributable to the state only if (1) it is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Id.*

Herring and Howard have made no showing as to either prong of the *Lugar* test. Indeed, they fail to develop any argument at all that the district court erred in its analysis. "Where issues are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, we consider them forfeited." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (cleaned up) (citation omitted). We therefore affirm the district court's dismissal of this claim.

### D.     The fitness-for-duty examinations

As set forth above, the district court dismissed Herring and Howard's claims arising out of their respective fitness-for-duty examinations. Herring and Howard do not raise the fitness-for-duty examinations in their brief on appeal and have therefore forfeited claims arising from them. *Courser*, 969 F.3d at 621.

### E.     Inclusion on *Brady-Giglio* list

On appeal, Herring and Howard argue that they were retaliated against when Bruno recommended their names for inclusion on the local prosecutor's *Brady-Giglio* list. This event occurred in November 2019, while their state-court lawsuits were pending, and the district court dismissed the claim as barred by res judicata in its motion-to-dismiss ruling. Defendants contend that the issue is not properly before us because Herring and Howard did not appeal the district court's order on the motion to dismiss.

Although the appellate rule requiring that the notice of appeal mention the judgment or order being appealed is jurisdictional, we have held that the jurisdictional requirements of the rule are to be liberally construed and applied. *Caudill v. Hollan*, 431 F.3d 900, 907 (6th Cir. 2005) (citing Fed. R. App. P. 3(c)(1)). In *Caudill*, a technical deficiency in the notice of appeal that mentioned only the latter of two orders upon which judgment was entered, rather than the judgment itself, did not divest us of jurisdiction to hear an appeal from the prior order, where the defendant was not prejudiced and understood the scope of the appeal. *Id.* at 904, 907.

On these facts, we have appellate jurisdiction. The "notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order." Fed. R. App. P. 3(c)(4). Hence, it is "not necessary to designate those orders in the notice of appeal." *Id.* If a plaintiff appeals a final order after losing on summary judgment, he or she may also contest the partial dismissals issued along the way. *See, e.g.*, *Wlodarz v. Centurion of Tenn., LLC*, No. 23-5708, 2024 WL 3723836, at *2 (6th Cir. June 21, 2024). So too here.

However, Herring and Howard fail to make any argument that the district court erred in its res judicata analysis. We therefore affirm the district court's dismissal of this claim. *See, e.g.*, *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 272 (6th Cir. 2008) (affirming summary judgment where plaintiffs failed to "address meaningfully the district court's reasoning").

**F.    AG Advisors Global investigation**

Herring and Howard claim that Moore, Tidwell, and Bruno retaliated against them during the investigation that AG Advisors conducted into Barkman's allegations of harassment beginning in August 2021. The defendants argue that this issue is not preserved for appeal because it was neither raised nor briefed below.

Yet, in their response to the defendants' motion for summary judgment, Herring and Howard argued that they had suffered various adverse actions in retaliation for having cooperated with the FBI about potential LEIN-related fraud, including that the defendants "regularly accus[ed] them] privately and publicly of being homophobic and of engaging in the harassment of Kevin Barkman due to his being gay." RE 25, Ans. to Mot. for Summ. J., PageID 1914-15. In support of this statement, Herring and Howard cited the AG Advisors investigation and contended that Tidwell, Moore, and Bruno made "inflammator[y] assert[ions]" during that investigation that the two of them were homophobic. *Id.* at PageID 1915 n.2. For its part, the district court did not specifically address this claim in its summary-judgment order, but dismissed all claims for First Amendment retaliation.

Although the district court did not specifically address this claim, we may "consider it because we conclude that the district court implicitly rejected it." *A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014) (citing *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 543 (6th Cir. 1986)). Herring and Howard do not demonstrate that Moore, Tidwell, and Bruno's comments to AG Advisors constituted "adverse action" in the context of a First Amendment retaliation claim. They claim generally that the defendants' actions "had negative implications for [their] career prospects, their standing within the department, their opportunities for advancement, the status of their employment, and their perception in the public eye." CA6 R. 18, Appellant Br., at 25. But they present no specific argument as to how the individual defendants' statements to the external investigators harmed them. *See, e.g.*, *Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999) ("[Plaintiff] offers only generalized statements about the effect on her character and reputation . . . . Nowhere does she attempt to concretize her personal injury."). Nor do Herring and Howard's cited cases establish an adverse action in this

case. *See, e.g.*, *Wenk v. O'Reilly*, 783 F.3d 585, 594-95 (6th Cir. 2015) (report of child abuse could constitute adverse action); *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 588-89 (6th Cir. 2008) (similar); *see also Paige v. Coyner*, 614 F.3d 273, 281-82 (6th Cir. 2010) (finding adverse action where defendant "call[ed] [plaintiff's] employer and ma[de] false statements regarding [her] public speech," intending for her to lose her job); *Harris v. Bornhorst*, 513 F.3d 503, 519 (6th Cir. 2008) (similar). Under the circumstances alleged here, we conclude that "a person of ordinary firmness" would not be deterred or chilled in the exercise of his First Amendment rights. *Thaddeus–X*, 175 F.3d at 394.

### G.     Qualified immunity

Herring and Howard next argue that, "due to [the defendants'] acts," their "clearly[] established rights of speech and association were violated and there is no question that a reasonable person would have known of the existence of said rights." CA6 R. 18, Appellant Br., at 29. The district court did not analyze whether defendants were entitled to qualified immunity. Given that Herring and Howard's § 1983 claims are forfeited on appeal or fail on their merits, we decline to reach that question as well.

### H.     *Monell* claim

Finally, Herring and Howard argue that the City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell* holds that municipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation. 436 U.S. at 694–95.

Although the parties briefed the *Monell* issue before the district court, and the court's summary-judgment order acknowledged the defendants' argument that "there is no basis on which to hold Ecorse liable for the alleged constitutional violations," the court did not specifically rule

on the *Monell* argument, opting instead to "address[] only those arguments necessary to resolve Defendants' motion." RE 29, Op. & Order on Summ. J., PageID 2210. Its analysis led it to dismiss all claims against all defendants, including the City, on the ground that Herring and Howard had "fail[ed] to demonstrate that Defendants violated their First Amendment rights by retaliating against Plaintiff[s] based on their protected speech or association with others." *Id.* at PageID2219. Given that there is no municipal liability without an underlying constitutional violation, *see Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000), the district court did not err in dismissing the claims against the City.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.