RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TODD COURSER,

*Plaintiff-Appellant*,

*v.*

No. 20-1038

KEITH ALLARD; BENJAMIN GRAHAM; JOSHUA CLINE,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:18-cv-00874—Gordon J. Quist, District Judge.

Argued:  July 29, 2020

Decided and Filed:  August 10, 2020

Before:  MOORE, CLAY, and McKEAGUE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Matthew S. DePerno, DEPERNO LAW OFFICE, Portage, Michigan, for Appellant. Sarah Riley Howard, PINSKY, SMITH, FAYETTE & KENNEDY, LLP, Grand Rapids, Michigan, for Appellees Allard and Graham.  **ON BRIEF:**  Matthew S. DePerno, DEPERNO LAW OFFICE, Portage, Michigan, for Appellant.  Sarah Riley Howard, H. Rhett Pinsky, PINSKY, SMITH, FAYETTE & KENNEDY, LLP, Grand Rapids, Michigan, for Appellees Allard and Graham.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.    Todd Courser was a member of the Michigan House of Representatives.  His affair with fellow-representative Cindy Gamrat and his related misconduct lost him that office.  Courser, however, does not see himself as the source of his misfortunes and instead alleges that the Defendants—Keith Allard, Benjamin Graham, and Joshua Cline—conspired together and with the Michigan House of Representatives to remove him from office.  Each Defendant worked for Courser and Gamrat as their legislative aides.  Two of them, Allard and Graham, went to the press to expose Courser's and Gamrat's affair, Courser's attempted coverup, and Courser's misuse of his public office for political and personal purposes.[1]    The *Detroit News* coverage prompted the Michigan House of Representatives to issue a report and hold a hearing on the allegations.  Courser resigned before he could be expelled.

This case is one of several that Courser and Gamrat have filed against various persons that they believe conspired against them to end their political careers.  For the reasons that follow, we **AFFIRM** the district court's judgment of dismissal of all claims against all Defendants.[2]

## I.  BACKGROUND

Courser is a former Republican member of the Michigan House of Representatives. While in office, Courser had an affair with another representative, Gamrat.  Defendants were legislative aides assigned to Courser and Gamrat.  Worried that he and Gamrat eventually would be caught, Courser concocted a plan to get ahead of the story by sending out an anonymous email to his constituents accusing himself of having an affair with Gamrat, but including

---

[1]The third defendant, Cline, was less involved, but is alleged to have surveilled Courser as well.

[2]Additionally, we deny Courser's motion to take judicial notice of certain documents that are not part of the record in this case, such as affidavits.  To the extent Courser requests that we take notice of other materials properly in front of us, we have reviewed public filings, hearings, and decisions relevant to this case.

outlandish allegations against himself of further escapades.  That way, when the real story broke about Courser's and Gamrat's affair, it would seem too incredible to believe.

Courser asked Graham to meet with him so that he could ask Graham to send the coverup email to Courser's constituents.  They met on May 19, 2015, and unbeknownst to Courser, Graham recorded their conversation.  During the meeting, Courser explained his plan to create a "controlled burn" to "inoculate the herd" with the coverup email.  Graham refused to participate, so Courser found someone else to send the email.

Meanwhile, Graham and Allard reported Courser's affair and misuse of their time for political and personal tasks to higher-ups in House leadership.  In retaliation, Courser directed the House Business Office to fire Allard and Graham.  After they were fired, Allard and Graham again tried to expose the affair to Republican leaders, but were unsuccessful.  So they went to the *Detroit News* with the recording.  Once the *Detroit News* published the story exposing Courser's affair and misconduct on August 7, 2015, the House investigated Courser and Gamrat.  On August 31, 2015, the House Business Office issued a report concluding that Courser and Gamrat had engaged in misconduct.  On September 9, 2015, the House held the Select Committee Hearing on Courser's misconduct.  During the hearing, Courser admitted that he "listened to the tape" that Graham had made on May 19, 2015, and that "it sounds like a complete record."  R. 12-1 (House Select Committee Hr'g Tr. at 12) (Page ID #95).  He also admitted that he improperly used his staff for political and personal matters.  *Id.* at 4 (Page ID #87).  Courser resigned before the House could expel him.  He was criminally charged and pleaded no contest to willful neglect of duty by a public officer.  He now claims that the recording Graham made on May 19, 2015, was altered and distorted the truth.  He also claims that Allard and Graham unlawfully surveilled him.

Cline allegedly was involved in gathering information on Courser as well, but to a lesser degree.  Cline quit his position as a legislative aide on April 14, 2015, before the "inoculate the herd" conversation and most of the alleged unlawful surveillance took place.  On similar facts, the district court granted Cline judgment on the pleadings in a lawsuit brought by Gamrat against

Cline for wiretapping, eavesdropping, civil stalking, and civil conspiracy. *See Gamrat v. Cline*, No. 1:16-CV-1094, 2019 WL 3024599, at \*4–5 (W.D. Mich. July 11, 2019).**3**

Separate from Defendants' alleged conduct, Courser received texts from Joe Gamrat, Cindy Gamrat's husband, and his friends harassing him over the affair. Courser alleges that Defendants were somehow involved in feeding information to Joe Gamrat to fan the flames of these "extortion texts."

Courser initially filed a lawsuit against multiple defendants, including Allard and Graham, on September 8, 2016. *See Courser v. Allard*, No. 1:16-cv-01108 (W.D. Mich.), R. 1 (Compl.) (Page ID #1). He voluntarily dismissed that action on December 12, 2016. *Id.*, R. 123 (Voluntary Dismissal) (Page ID #4545). Then, on August 6, 2018, he filed two new lawsuits making similar claims but splitting up the defendants. One of those lawsuits was this case, brought against Allard, Graham, and Cline. *See* R. 1 (Compl.) (Page ID #1). The other lawsuit was against the Michigan House of Representatives and individual representatives and staff members (collectively, the "House defendants"). *See Courser v. Mich. House of Representatives*, No. 1:18-cv-00882 (W.D. Mich.) (the "Michigan House case"), R. 1 (Compl.) (Page ID #1).[4] The operative complaints filed in each case are virtually identical. *Compare id. with* R. 17 (1st Am. Compl.) (Page ID #172). The only meaningful difference is that there are three counts that are alleged in the House case that are not alleged in this case: an unconstitutional vagueness challenge to Article IV, § 16 of the Michigan Constitution, a request for indemnification, and fraudulent misrepresentation claims alleged solely against two House defendants. Every count alleged in this case appears in the Michigan House case.

Allard and Graham filed a motion to dismiss before Courser filed his First Amended Complaint. *See* R. 11 (Mot. to Dismiss) (Page ID #56). After Courser amended his complaint, Allard and Graham filed a motion to strike. *See* R. 18 (Mot. to Strike) (Page ID #1821). Cline did not file anything. On July 30, 2019, the district court denied as moot Allard's and Graham's

---

**3**We recently affirmed the district court's dismissal of Gamrat's claims against Allard, Graham, and Cline in *Gamrat v. McBroom*, -- F. App'x --, No. 19-2364, 2020 WL 4346677, at \*3 (6th Cir. July 29, 2020).

**4**Courser's appeal from the district court's dismissal of his claims in the Michigan House case is pending as appeal No. 19-1840.

motion to dismiss, denied Allard's and Graham's motion to strike, and dismissed *sua sponte* most of Courser's claims. *See* R. 22 (Order of 07/30/19 at 4) (Page ID #1846).

Citing its own decisions in related cases, the district court *sua sponte* dismissed Counts 1 (42 U.S.C. § 1983), 2 (42 U.S.C. § 1985), 3 (violation of the Fair and Just Treatment Clause of the Michigan Constitution), 5 (state and federal computer fraud), 6 (libel, slander, and defamation), 7 (civil stalking), 9 (tortious interference with business relationships), 11 (negligence and negligent infliction of emotional distress), 12 (RICO) and 13 (RICO conspiracy), 14 (intentional interference with or destruction of evidence/spoliation), and 15 (conspiracy). *Id.* at 2–4 (Page ID #1844–46). Courser did not object in the district court to the *sua sponte* nature of the dismissal.

With respect to the remaining claims—Counts 4 (violation of the Federal Wiretapping Act and Michigan's Eavesdropping Statute), 8 (invasion of privacy and intrusion upon seclusion), and 10 (intentional infliction of emotional distress)—the district court instructed Allard and Graham to file a motion to dismiss within twenty-one days, before the end of August. *Id.* at 4 (Page ID #1846). Allard and Graham missed that deadline and, asking for forgiveness rather than permission, filed their second motion to dismiss in October. *See* R. 26 (Second Mot. to Dismiss) (Page ID #1853). The district court accepted their motion in spite of the delay, noting that their oversight was "understandable in light of the procedural history and circumstances of the case." *See* R. 29 (Order of 10/08/19 at 2) (Page ID #1873). Courser made no objections to the extension in the district court. Instead, he jointly stipulated with Defendants to a briefing schedule. *See* R. 30 (Stipulation at 1) (Page ID #1874). All parties, with the exception of Cline, fully briefed the second motion to dismiss before the district court issued a ruling.

Before dismissing any of Courser's claims, the district court entered default against Cline for failing to plead or defend. R. 15 (Entry of Default 12/21/2018) (Page ID #170). Courser never moved for entry of default judgment, and Cline never moved for the district court to set aside the default.

The district court issued its final opinion and judgment in this case on December 19, 2019, granting Allard's and Graham's second motion to dismiss the remaining claims against them. R. 36 (Final Op. at 4–5) (Page ID #1938–39); R. 37 (Judgment) (Page ID #1940). In the same order, the district court exercised its discretion to set aside the entry of default against Cline and dismissed Courser's claims against Cline. R. 36 (Final Op. at 5) (Page ID #1939). We have jurisdiction over Courser's timely appeal from the district court's opinion and order granting Defendants' motion to dismiss and its order granting Allard's and Graham's motion for leave to file a second motion to dismiss.

## II.  ANALYSIS

### A.  First Dismissal of Claims

After Courser amended his complaint following Allard's and Graham's filing of their motion to dismiss, the district court dismissed most of Courser's claims *sua sponte*. The claims that the district court dismissed at that time are:  Counts 1 (42 U.S.C. § 1983), 2 (42 U.S.C. § 1985), 3 (violation of the Fair and Just Treatment Clause of the Michigan Constitution), 5 (state and federal computer fraud), 6 (libel, slander, and defamation), 7 (civil stalking), 9 (tortious interference with business relationships), 11 (negligence and negligent infliction of emotional distress), 12 (RICO) and 13 (RICO conspiracy), 14 (intentional interference with or destruction of evidence/spoliation), and 15 (conspiracy). R. 22 (Order of 07/30/19 at 2–4) (Page ID #1844–46). Relying in large part on its decision in the Michigan House case and Gamrat's case against Cline, the district court dismissed the claims against Defendants as implausible or irremediable as a matter of law. We note that Courser has not objected to the fact that the district court dismissed the claims *sua sponte*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). At this stage, we must take factual allegations as true, but need not accept legal conclusions couched as factual allegations. *Id.* We review a dismissal pursuant to Rule 12(b)(6) de novo. *Robbins v. New Cingular Wireless PCS,*

*LLC*, 854 F.3d 315, 318 (6th Cir. 2017). For the reasons that follow, we affirm the district court's dismissal of all of Courser's claims.

### 1. Count 1 – 42 U.S.C. § 1983

Courser claims that Defendants, by surveilling him and conspiring to remove him from office, violated his constitutional rights under the Due Process Clause, the Equal Protection Clause, and the Fourth Amendment. He accordingly brings a 42 U.S.C. § 1983 claim against Defendants for the violation of his constitutional rights. The district court dismissed this claim in part because "Courser fail[ed] to state a constitutional violation." R. 22 (Order of 07/30/19 at 2) (Page ID #1844).

#### a. Procedural Due Process

With respect to procedural due process, Courser must plausibly allege that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). In the Michigan House case, Courser argued that he was deprived of a liberty interest, but he did not state what that liberty interest was and he did not cite any cases supporting his position. *See Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1147 (W.D. Mich. 2019). Therefore, the district court held that Courser's procedural due process theory fails.

The same is true here. Courser has not stated a liberty interest or cited any cases to back up his claim of an alleged deprivation of liberty. Because Courser presents his procedural due process claim in the same way here, it was appropriate for the district court to rely on its decision in the Michigan House case. *See United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("We have cautioned that '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited],' and that '[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))). The

district court properly determined that Courser failed to state a claim for a procedural due process violation.

### b. Substantive Due Process

With respect to substantive due process, Courser must plausibly allege a conscience-shocking deprivation of a liberty interest, described with particular care. *See Guertin v. Michigan*, 912 F.3d 907, 918 (6th Cir. 2019). In the Michigan House case, the district court held that Courser failed to allege a substantive due process claim because "most of the allegations pertain to Allard, Graham, and Cline," who were not defendants in that case. *See Courser*, 404 F. Supp. 3d at 1147. Thus, "Courser's allegations against [the House] Defendants offer[ed] nothing more than conclusions that do not rise to the level of a substantive due process violation." *Id.*

In this instance, it was not appropriate for the district court to rely on its decision in the Michigan House case because the defendants in this case *are* Allard, Graham, and Cline. The reason why the district court dismissed Courser's claim in the Michigan House case is because he made specific allegations as to Allard, Graham, and Cline, but not as to the defendants in that case. Nevertheless, as the district court noted with respect to Courser's procedural due process claim, Courser has not stated a liberty interest. Thus, we affirm the district court's dismissal of this claim.

### c. Equal Protection

With respect to equal protection, Courser must plausibly allege "that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation marks omitted). In the Michigan House case, Courser did not allege that he was part of a suspect class or that the defendants unlawfully discriminated against him. *See Courser*, 404 F. Supp. 3d at 1147. Instead, Courser pressed the "class-of-one" theory, *id.*, by which a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *Village of Willowbrook v.*

*Olech*, 528 U.S. 562, 564 (2000) (per curiam).  The district court held that Courser "cannot avail himself of the class-of-one theory" because that theory "has no application in the public employment context."  *Courser*, 404 F. Supp. 3d at 1147–48 (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603–04 (2008)).

Because Courser presents his equal protection claim in the same way here, it was appropriate for the district court to rely on its decision in the Michigan House case.  Moreover, the district court properly determined that Courser failed to state a constitutional violation and rightly dismissed this claim.

### d.  Fourth Amendment

Courser additionally claims that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures.  In the Michigan House case, Courser claimed that Graham, at Allard's direction, recorded the "controlled burn" conversation without Courser's knowledge or consent.  *See Courser*, 404 F. Supp. 3d at 1148.  The district court held that this claim fails because the recording was done by Graham and, allegedly, Allard—not the House defendants.  *Id.*  Additionally, in Gamrat's case, the district court held that recording the "controlled burn" conversation did not violate federal or state law.  *Gamrat v. Allard*, 320 F. Supp. 3d 927, 945–46 (W.D. Mich. 2018), *aff'd Gamrat v. McBroom*, -- F. App'x --, No. 19-2364, 2020 WL 4346677 (6th Cir. July 29, 2020).  In this case, the court further observed that Courser "fail[ed] to explain how a recording by a person who was lawfully part of the conversation could be a seizure under the Fourth Amendment."  *Courser*, 404 F. Supp. 3d at 1148.

Courser's Fourth Amendment claim in this case also is based on the "controlled burn" recording.  The difference here, however, is that Allard and Graham, who allegedly were responsible for the recording, are named as defendants.  Nevertheless, because Courser, once again, has made a conclusory argument and has cited no cases to support his position, we affirm the district court's dismissal of Courser's Fourth Amendment claim.  *See Robinson*, 390 F.3d at 886.

**2. Count 2 – 42 U.S.C. § 1985**

Courser claims that Defendants conspired against him in bringing about the House Select Committee Hearing, in violation of 42 U.S.C. § 1985. The district court dismissed this claim because "Courser fail[ed] to state a claim for a violation of § 1985." R. 22 (Order of 07/30/19 at 2) (Page ID #1844). In the Michigan House case, Courser alleged that the defendants violated subsections (1) and (3) of § 1985, and stated in a response that the defendants also violated subsection (2). *See Courser*, 404 F. Supp. 3d at 1148–49. Subsection (1) "prohibits conspiracies to interfere with federal officers in the performance of their duties." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006). Subsection (2) "prohibits conspiracies to influence parties, witness[es], or jurors in federal court proceedings . . . [and] conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Id.* To state a claim under subsection (3), "which prohibits conspiracies to deprive persons of their equal protection rights, a plaintiff must allege that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)).

In the Michigan House case, the district court dismissed Courser's subsection (1) argument because "Courser was not a federal officer." *See Courser*, 404 F. Supp. 3d at 1148. The district court rejected the subsection (2) argument because Courser's allegations did not concern a court proceeding. *See id.* at 1148–49. Finally, the district court rejected the subsection (3) argument because Courser did not allege a conspiracy "motivated by racial, or other class-based, invidiously discriminatory animus." *Id.* at 1148 (quoting *Moniz v. Cox*, 512 F. App'x 495, 499 (6th Cir. 2013)). Because Courser presents his § 1985 claim in the same way here, it was appropriate for the district court to rely on its decision in the Michigan House case. Moreover, the district court properly determined that Courser failed to state a claim under any subsection of § 1985.

**3. Count 3 – Fair and Just Treatment Clause of the Michigan Constitution**

Courser claims that the House Select Committee Hearing violated his right to fair and just treatment under Michigan's Constitution. The Fair and Just Treatment clause of Michigan's

Constitution provides: "The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." MICH. CONST. art. 1, § 17.

The district court rightly dismissed this claim because it is barred by the Eleventh Amendment. R. 22 (Order of 07/30/19 at 2) (Page ID #1844). Under Michigan law, a plaintiff seeking damages under Michigan's Constitution must sue state officials in their official capacities. *See Smith v. Dep't of Pub. Health*, 410 N.W.2d 749, 751 (1987), *affirmed sub nom. Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Eleventh Amendment "[s]overeign immunity protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court." *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017). Because Courser's fair-and-just-treatment claim is proper only insofar as it is brought against the defendants in their official capacities, Courser's claim is barred by the Eleventh Amendment. It also is worth noting that Defendants were not personally involved in the hearing. For all these reasons, Courser's claim fails.

> **4. Count 5 – Computer Fraud and Abuse Act (18 U.S.C. § 1030) and Michigan Fraudulent Access to Computers, Computer Systems, and Computer Networks Act (MICH. COMP. LAWS § 752.791 et seq.)**

Courser claims that Defendants accessed his work computer without his authorization and obtained and transmitted information from that computer. Under the Computer Fraud and Abuse Act ("CFAA"), a person "who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The Michigan Fraudulent Access to Computers, Computer Systems, and Computer Networks Act similarly punishes unauthorized access to computers in certain circumstances, but it does not provide for a private right of action. *Garback v. Lossing*, No. 09-cv-12407, 2010 WL 3733971, at *8 (E.D. Mich. Sept. 20, 2010).

The district court dismissed Courser's CFAA claim because "Courser does not allege any sort of loss compensable under the CFAA, which is limited to damage to the illegally-accessed computer or computer system, or loss incurred because the computer's service was interrupted and does not include subsequent use of illegally-obtained information." R. 22 (Order of 07/30/19 at 2) (Page ID #1844). As the district court noted in the Michigan House case, Courser's claim was especially dubious because "the computers the House Defendants seized and searched belonged to the House, not Courser." *See Courser*, 404 F. Supp. 3d at 1150. The district court properly determined that Courser failed to state a claim under the CFAA.

Additionally, the district court properly dismissed Courser's Michigan Fraudulent Access to Computers, Computer Systems, and Computer Networks Act claim "because there is no private cause of action under that statute." R. 22 (Order of 07/30/19 at 2) (Page ID #1844). The Act, instead, is a criminal statute, with no civil component. *See Garback*, 2010 WL 3733971, at *8 ("[The plaintiff] offers no authority, and the Court has found none, allowing the Court to permit enforcement of the criminal statute through a private civil action."). In Michigan, a criminal statute must expressly create a private cause of action, or one must be inferred from a lack of adequate means of enforcement. *Long v. Chelsea Cmty. Hosp.*, 557 N.W.2d 157, 160 (Mich. Ct. App. 1996). As neither circumstance is present here, Courser cannot sue under this statute, and the district court rightly dismissed his claim.

### 5. Count 6 – Libel, Slander, and Defamation

Courser claims that Defendants are liable for libel, slander, and defamation for delivering the supposedly fabricated recording of the "controlled burn" conversation to the *Detroit News* in August 2015. The elements of a defamation claim are:

(1) a false and defamatory statement concerning the plaintiff,

(2) an unprivileged communication to a third party,

(3) fault amounting at least to negligence on the part of the publisher, and

(4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Ghanam v. Does*, 845 N.W.2d 128, 142 (Mich. Ct. App. 2014) (internal quotation omitted).

The district court dismissed this claim because it is time-barred. Defamation, libel, and slander claims under Michigan law carry a one-year statute of limitations, MICH. COMP. LAWS § 600.5805(11), and the limitations period begins to run upon publication, not discovery, *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 443 (Mich. Ct. App. 2018). Courser's claim is well past due. Moreover, as the district court held, even if this claim were not time-barred, "Courser cannot show that the recording was false, as required for a defamation claim, because he acknowledged before the [House] Select Committee that his voice was on the tape and that he made the statements attributed to him." R. 22 (Order of 07/30/19 at 3) (Page ID #1845). The district court rightly dismissed this claim.

### 6. Count 7 – Civil Stalking (MICH. COMP. LAWS § 600.2954)

Courser claims that Defendants stalked him under Michigan Law. *See* MICH. COMP. LAWS § 600.2954. The Michigan Supreme Court has defined civil stalking as "a willful course of conduct whereby the victim of repeated or continuous harassment actually is, and a reasonable person would be, caused to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Nastal v. Henderson & Assocs. Investigations, Inc.*, 691 N.W.2d 1, 6 (Mich. 2005). Harassment is defined as including "repeated or continuing unconsented contact" causing emotional distress—which is what Courser alleges here. MICH. COMP. LAWS § 750.411h(c).

The district court dismissed this claim because "Courser . . . failed to allege any unconsented contacts, and none of the Defendants in this case sent or coordinated the extortion texts." R. 22 (Order of 07/30/19 at 3) (Page ID #1845). In the Michigan House case, the district court concluded, based on a police report that Courser himself referred to in his complaint, that Joe Gamrat and David Horr sent the extortion texts. *See Courser*, 404 F. Supp. 3d at 1145. Like in the Michigan House case, Courser failed plausibly to allege that Defendants here sent the extortion texts. Without an unconsented-to contact, there can be no stalking claim, and Courser has not pointed to any case that has extended liability for civil stalking to persons coordinating or encouraging, rather than personally perpetrating, stalking. *See Robinson*, 390 F.3d at 886.

Courser tries to avoid this result by hooking his stalking claim into his civil conspiracy claim. He argues that he "does not have to show that any of these Defendants personally took

part in the stalking," but instead "only needs to allege that Defendants were part of the conspiracy." Appellant Br. at 35. Courser's logic is circular. To state a claim for civil conspiracy, Courser must "prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (quoting *Early Detection Ctr., PC v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986)). Thus, Courser cannot mount a civil stalking claim based on his conspiracy claim because the civil stalking claim is necessary for him to prove his conspiracy claim. We accordingly affirm the district court's dismissal of this claim.

### 7. Count 9 – Tortious Interference with Business Relationships

Courser claims that Defendants are liable for tortious interference with his business relationships. The elements of a tortious interference claim are:

(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract,

(2) knowledge of the relationship or expectancy on the part of the defendant interferer,

(3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and

(4) resulting damage to the party whose relationship or expectancy was disrupted.

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005). The district court rightly dismissed this claim because "Courser fails to . . . identify[] a specific business relationship or alleg[e] that Defendants knew that their actions would harm a specific business relationship." R. 22 (Order of 07/30/19 at 3) (Page ID #1845).

### 8. Count 11 – Negligence and Negligent Infliction of Emotional Distress

Courser claims that Defendants are liable for negligence and negligent infliction of emotional distress under Michigan tort law. Yet, Courser makes no argument based on negligence or negligent infliction of emotional distress in his briefing.[5] He instead makes a case

---

[5]In any event, claims for negligent infliction of emotional distress under Michigan law "are limited to 'bystander recovery,'"—i.e., cases in which the plaintiff witnessed an injury to a third party—"and Courser has not

for intentional infliction of emotional distress. *See* Appellant Br. at 36. Accordingly, Courser has forfeited any argument on this point. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal." (internal quotation omitted)). We affirm the district court's dismissal of this claim.

### 9. Counts 12 and 13 – RICO (18 U.S.C. § 1961 et seq.) and Conspiracy To Violate RICO

Courser claims that Defendants forced him to resign through their corrupt activity, in violation of RICO. The federal RICO statute creates a cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962," which prohibits persons from engaging in a pattern of racketeering. 18 U.S.C. §§ 1964(c), 1962. To establish a claim under RICO, the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). To prove a pattern of racketeering, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). For continuity to exist, there must be a threat of future criminal conduct. *See id.* at 242; *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 455 (6th Cir. 2019). If the alleged scheme involved a single scheme and a single goal, the continuity requirement is not met. *See Aces High Coal Sales, Inc.*, 768 F. App'x at 456–57.

The district court dismissed this claim because "Courser [could not] establish continuity to support a RICO claim." R. 22 (Order of 07/30/19 at 3) (Page ID #1845). In the Michigan House case, "Courser allege[d] a scheme that lasted no more than nine months and had but a single purpose and victim—to remove Courser from office. The alleged scheme was complete once Courser resigned, as nothing else remained to be done." *See Courser*, 404 F. Supp. 3d at 1153. Thus, "[b]ecause the single purpose was accomplished, no threat of alleged future criminal activity remained." *Id.* Because Courser presents his RICO claim in the same way here, it was appropriate for the district court to rely on its decision in the Michigan House case.

---

alleged that he witnessed an injury to a third person." *See* R. 22 (Order of 07/30/19 at 3) (Page ID #1845); *Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 734–35 (Mich. Ct. App. 1986).

Courser additionally alleges a conspiracy to violate RICO. The district court dismissed this claim because "Courser cannot establish continuity to support a RICO claim." R. 22 (Order of 07/30/19 at 3) (Page ID #1845). In the Michigan House case, the district court ruled that, "because Courser d[id] not establish a RICO claim, he also fail[ed] to establish a RICO conspiracy." *See Courser*, 404 F. Supp. 3d at 1153. Applying the same ruling here was proper. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990) ("Plaintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts.").

### 10. Count 14 – Intentional Interference With or Destruction of Evidence and Spoliation of Evidence

Courser alleges that Defendants committed the tort of spoliation by modifying information on his work computer. The district court rightly dismissed this claim because "Michigan does not recognize the stand-alone tort of spoliation." R. 22 (Order of 07/30/19 at 3) (Page ID #1845); *see Teel v. Meredith*, 774 N.W.2d 527, 529 (Mich. Ct. App. 2009).

### 11. Count 15 – Conspiracy and Concert of Actions

Finally, Courser claims that Defendants conspired against him and acted in concert in violation of Michigan law. "In Michigan, a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Specialized Pharm. Servs., LLC v. Magnum Health & Rehab of Adrian, LLC*, No. 12–12785, 2013 WL 1431722, at *4 (E.D. Mich. Apr. 9, 2013). "[C]onspiracy claims must be pled with some degree of specificity"—not merely vague or conclusory allegations. *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009). And "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers*, 670 N.W.2d at 580 (quoting *Early Detection Ctr., PC*, 403 N.W.2d at 836). The doctrine of concert of action applies when a plaintiff shows "that all defendants acted tortiously pursuant to a common design." *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164, 176 (Mich. 1984).

The district court dismissed this claim because "Courser admitted the accuracy of the contents of the May 19, 2015, 'fabricated' recording, which was not false, and Courser's

allegation that Defendants engaged in concerted action to 'set up' Courser and then have him criminally charged is not plausible in light of the available public record and the Court's conclusion that Courser failed to allege a conspiracy or concert of actions between Defendants Allard, Graham, and Cline and the House Defendants." R. 22 (Order of 07/30/19 at 3–4) (Page ID #1845–46). In the Michigan House case, the district court dismissed the conspiracy claim against the House defendants for several reasons.

First, according to the district court, "Courser's conspiracy and concert of action claim [wa]s not only implausible, but absurd on its face." *Courser*, 404 F. Supp. 3d at 1145. Courser claimed that the defendants conspired against him and Gamrat because they refused to sign the Republican Caucus Pledge promising to toe the party line. The district court found this motivation implausible because the House Republicans had enough of a majority that they would not need Courser's and Gamrat's votes to pass legislation. *Id.* It is not clear to what extent the district court relied on this particular conclusion from the Michigan House case in rendering its decision here. Nevertheless, to the extent that the district court did rely on this conclusion, doing so was improper. Courser's theory for the defendants' motivation is not entirely implausible. The Michigan Republican Party has an interest in making sure their members toe the party line even if they presently have a majority. A House member who votes against them is a liability. It creates tension and bad optics, and it could lead to decisive votes against them down the line if they lose elections. Courser's theory does not stretch the imagination so far as to render his claim implausible.

Next, the district court noted that the House defendants terminated Allard and Graham and initially refused to act on Allard's and Graham's allegations of the affair or the "controlled burn" recording. *Id*. In fact, Allard and Graham had to bring the recording to the *Detroit News* because the House defendants refused to act. *Id*. Therefore, according to the district court, Courser failed plausibly to allege that the House defendants and Allard and Graham were acting in concert or according to an agreement or common design. The same would be true for Cline, who left his job before the hearing even took place. The problem with this reasoning, however, is that Courser also alleges that Allard, Graham, and Cline conspired together as a single group, in addition to his allegations that they conspired with the House defendants.

We can resolve this claim on simpler grounds:  Courser has not proven a separate, actionable tort that could serve as the basis for his conspiracy claim, or as the basis for a concert of actions.  *See supra* at pp. 13–17; *Gamrat v. McBroom*, -- F. App'x --, No. 19-2364, 2020 WL 4346677, at *3 (6th Cir. July 29, 2020) ("Gamrat fails to state a plausible claim for any other actionable tort, so she also fails to state a claim for civil conspiracy.").  We accordingly affirm the district court's dismissal of this claim.

**B.  Second Dismissal of Claims**

After *sua sponte* dismissing most of Courser's claims, the district court directed Defendants to file a second motion to dismiss on the remaining claims within 21 days.  The remaining claims were:  Counts 4 (violation of the Federal Wiretapping Act and Michigan's Eavesdropping statute), 8 (invasion of privacy and intrusion upon seclusion), and 10 (intentional infliction of emotional distress).  Even though Allard and Graham missed the deadline to file by a longshot, the district court accepted their motion and granted them an extension.  Following briefing by both sides, the district court dismissed each of the remaining counts.

In the first instance, Courser argues that the district court should not have granted Allard and Graham leave to file a second motion to dismiss after they missed the deadline.  Yet, Courser made no objections to the extension of the deadline in the district court.  Quite the contrary, after the district court granted the extension, Courser jointly stipulated with Defendants to a briefing schedule for their motion to dismiss.  We therefore treat Courser's argument—which does not even concern the merits of his claims—as forfeited and proceed to the merits.

1.    **Count 4 –Federal Wiretapping Act (18 U.S.C. § 2511) and Michigan's Eavesdropping Statute (MICH. COMP. LAWS § 600.585(2))**

Courser claims that recording the "controlled burn" conversation violated the Federal Wiretapping Act and Michigan's Eavesdropping statute.[6]  The district court dismissed Courser's Federal Wiretapping Act claim because it is time-barred.  R. 36 (Final Op. at 3) (Page ID #1937).

---

[6]Courser brought up additional recordings at oral argument, but did not argue his claims based on those recordings in his briefing.  Courser argued with respect to the "controlled burn" recording only.  *See* Appellant Br. at 31–34, 47.  Therefore, we deem forfeited any arguments based on the additional recordings.  *See Johnson*, 440 F.3d at 845–46.

The Federal Wiretapping Act is subject to a two-year statute of limitations, commencing from "the date upon which the claimant first ha[d] a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). As the district court noted in the Michigan House case, Courser heard the recording of the "controlled burn" conversation by the time of the House Select Committee Hearing in September 2015. *See Courser*, 404 F. Supp. 3d at 1149. Thus, the district court properly concluded that this claim, submitted in August 2018, is time-barred.

Having dismissed all federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims, including Courser's claim brought under Michigan's eavesdropping statute. R. 36 (Final Op. at 3) (Page ID #1937). It was within the district court's discretion to do so. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- . . . the district court has dismissed all claims over which it has original jurisdiction.").

### 2. Counts 8 and 10 – Privacy Torts and Intentional Infliction of Emotional Distress

Again, in light of the district court's dismissal of all federal claims, the district court declined to exercise supplemental jurisdiction over Courser's state-law tort claims for invasion of privacy, intrusion upon seclusion, and intentional infliction of emotional distress. R. 36 (Final Op. at 3) (Page ID #1937). Doing so was a proper exercise of the district court's discretion. *See* 28 U.S.C. § 1367(c)(3).

## C. Default Judgment Against Cline

In its discretion, the district court set aside the entry of default against Cline. Courser never moved for default *judgment*. A district court may, in its discretion, "set aside an entry of default for good cause." FED. R. CIV. P. 55(c). We accordingly review for abuse of discretion. *See United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983). Because "[t]rials on the merits are favored in federal courts," "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." *Id.* (internal quotation omitted). The factors for good cause are:

(1)  whether culpable conduct of the defendant led to the default,

(2)  whether the defendant has a meritorious defense, and

(3)  whether the plaintiff will be prejudiced.

*Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) (quotation omitted).

Here, the district court was "focused on the second factor" because "any conduct attributable to Cline falls well outside of the statute of limitations under the Federal Wiretapping Act"—Courser's only surviving federal claim. R. 36 (Final Order at 4) (Page ID #1938). "With the entry of default set aside, the Court . . . dismiss[ed] the Federal Wiretapping Claim against Cline and decline[d] to exercise supplemental jurisdiction over the remaining state-law claims." *Id.* Doing so was not an abuse of discretion, particularly in light of the policy favoring removal of defaults. And it makes sense to dismiss Courser's claims against Cline together with Courser's claims against Allard and Graham because, if anything, Cline was even less involved in the alleged conspiracy than Allard and Graham.

Additionally, there is some evidence of culpable conduct on Courser's part leading to the default. The Michigan Attorney General's Office learned from Cline that Courser tried to pressure him into signing multiple affidavits supporting Courser's case, outside the presence of Cline's attorney. R. 35-1 (Aff. of Special Agent) (Page ID #1931). Courser told Cline that he would dismiss him from the litigation if he signed the affidavit but would move to default Cline in the litigation if he did *not* sign the affidavit. *Id.* at 3 (Page ID #1934). According to the special agent of the Attorney General's Office, Cline agreed to sign an affidavit on April 5, 2019, *id.* at 2 (Page ID #1933), but subsequently refused to sign an additional affidavit and had his lawyer contact the Attorney General's Office instead, *id.* at 3 (Page ID #1934). Courser attached the Cline affidavit dated April 5, 2019, to his response to Allard's and Graham's second motion to dismiss. *See* R. 32-1 (Aff. of Cline at 2) (Page ID #1904). Curiously, Courser moved for entry of default but never moved for entry of default *judgment*. Without presuming the truth of the affidavit of the special agent of the Attorney General's Office, these events and writings at the very least are concerning and demonstrate some degree of culpable conduct on Courser's part.

For all these reasons, we affirm the district court's decision to set aside entry of default against Cline.

## III.  CONCLUSION

We **AFFIRM** the district court's judgment of dismissal of all claims against all Defendants.